UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DARRELL JOHNSON,<br><br>  Petitioner,<br><br>  v.<br><br>WARDEN,<br><br>  Respondent. | Case No. 5:22-cv-00099-AB-KES<br><br>ORDER TO SHOW CAUSE WHY PETITION SHOULD NOT BE DISMISSED WITHOUT PREJUDICE AS UNEXHAUSTED |

## I.

## BACKGROUND

On January 1, 2022, Robert Darrell Johnson ("Petitioner") constructively[1] filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Dkt. 1 ["Petition"].) Petitioner appears to be challenging his

---

[1] "Under the mailbox rule, a prisoner's pro se habeas petition is deemed filed when he hands it over to prison authorities for mailing to the relevant court." Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citation omitted); see also Houston v. Lack, 487 U.S. 266, 268 (1988). A court generally deems a habeas petition filed on the day it is signed, because it assumes the petitioner turned the petition over to prison authorities for mailing that day. See Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014); Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010). Petitioner signed the Petition on January 1, 2022. (Id. at 8.)

1

2013 conviction for murder and resulting sentence of 25 years to life without the possibility of parole. (Id. at 2.) Petitioner was found not guilty by reason of insanity and committed to Patton State Hospital for restoration of his sanity. (Id.); People v. Johnson, No. E071648, 2020 Cal. App. Unpub. LEXIS 7591 (Dec. 4, 2020).

## II.
## LEGAL STANDARD

The United States Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas petition be exhausted before a federal court may grant the petition. See Rose v. Lundy, 455 U.S. 509, 522 (1982). If all or some of the claims have not been exhausted, then the petition is subject to dismissal. Id.

To be exhausted, a claim must have been presented to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of the petitioner's federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam). Exhaustion requires that a petitioner's claims be fairly presented to the highest court in a state court system even if that court's review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 845-47 (1999); James v. Giles, 221 F.3d 1074, 1077, n.3 (9th Cir. 2000). For a petitioner in California state custody, this generally means the petitioner must have fairly presented his claims to the California Supreme Court. See O'Sullivan, 526 U.S. at 845 (interpreting 28 U.S.C. § 2254(c)); Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999) (applying O'Sullivan to California). A petitioner has the burden of demonstrating that he has exhausted available state remedies. See, e.g., Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), all federal habeas petitions are subject to a one-year statute of limitations, and claims that are not exhausted and presented to the federal court

2

within one year of the judgment becoming "final," as defined by AEDPA. 28 U.S.C. § 2244(d); Gonzalez v. Thaler, 565 U.S. 134, 135 (2012); Jimenez v. Quarterman, 555 U.S. 113, 119 (2009).

Under Rhines v. Weber, 544 U.S. 269 (2005), a district court has discretion to stay a petition to allow a petitioner to exhaust his claims in state court without running afoul of AEDPA's one-year statute of limitations period. Id. at 273-75. A district court may stay a petition if: (1) the petitioner has good cause for his failure to exhaust his claims; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics. Id. at 278.

## III.
## PROCEDURAL HISTORY

Petitioner stabbed a bus driver 15 times, killing him. He pleaded not guilty and not guilty by reason of insanity. In the guilt phase of his trial, a jury convicted him of first degree, special circumstance murder and found he used a deadly or dangerous weapon during the commission of the murder. In the sanity phase, the jury found he was insane at the time of the murder. The trial court committed Petitioner to Patton State Hospital for restoration of his sanity. Johnson, 2020 Cal. App. Unpub. LEXIS 7591 at *1.

Petitioner filed a counseled appeal, arguing that the evidence admitted at trial was insufficient to prove first degree murder under either theory presented to the jury: (1) that the murder was willful, premeditated, and deliberate, or (2) that Petitioner lay in wait before committing the murder. Petitioner therefore argued that his conviction should be reduced to second degree murder and his maximum term of commitment reduced to 15 years to life plus one year for the deadly or dangerous weapon enhancement. The California Court of Appeal issued an opinion affirming the commitment order on November 18, 2020, and an order denying Petitioner's petition for rehearing on December 4, 2020. Id. at *1-2.

On December 18, 2020, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 10, 2021. People v. Johnson, No. S266328, 2021 Cal. LEXIS 943 (Feb. 10, 2021).

On January 1, 2022, Petitioner constructively filed the instant Petition in this Court. (Pet. at 8.) The Petition appears to bring at least the following claims:

- Petitioner's appellate counsel was ineffective because (a) she "refuse[d] to hire a private investigator to look into [Petitioner's] constitutional rights and human rights being violated, that has a cause and effect of the crime"[2] and "to investigate witnesses that testified at trial, that withheld testimony"; (b) "discriminated [against him] by saying it's [his] mental illness"; (c) argued on appeal that his sentence should be reduced instead of seeking a new trial, as he requested; (d) wrote him letters with "misspelled basic words." (Id. at 5 ¶ 8(a); id. at 9; id. at 12 [letter purportedly from attorney with typos].)
- Petitioner "was in isolation 2½ years 23½ hours lock down for know[ing] Deputy Juan Cedeno's address and beaten by deputies and threaten[ed] not to testify on [his] own behalf due to relationship with deputy's wife." (Id. at 5-6 ¶ 8(b); id. at 9.)
- Petitioner's attorneys during his criminal trial, Erin Alexander and Andrew Moll, did not inform the criminal court about the abuse by deputies, even though Petitioner told them about the abuse and they saw bruises on his hands. (Id. at 9.) They advised him not to testify at trial, even though if he had testified about the abuse "that could have had a different outcome of the verdict from the jury and [Petitioner] being

---

[2] This appears to refer to Petitioner's contention that he and his father were "victim[s] of C.I.A. project MK-Ultra, … a real government experimentation of brainwashing…." (Pet. at 11.) In letters attached to the Petition, Petitioner asserts that at the time of the murder, he was "in a drug induce[d] [state] and under the influence of Project MK Ultra." (Id. at 17.)

4

convicted." (Id.)

- State court Judge Michael A. Smith, who presided over Petitioner's criminal trial and a restraining order hearing, "let deputies threaten and assault" Petitioner. (Id. at 6 ¶ 8(b).)
- Petitioner "didn't see any compensation for [his] living conditions at West Valley Detention Center" even though civil rights attorney Sharon Brunner settled a lawsuit on inmates' behalf. (Id. at 11.)
- Petitioner's rights under Brady v. Maryland, 373 U.S. 83 (1963) were violated because San Bernardino District Attorney Michael A. Ramos failed to disclose to Petitioner's attorney that Petitioner "assaulted [the] victim two years prior … due to [his] human rights being violated" and he "was arrested [and] … held [for] three weeks…." (Id. at 6 ¶ 8(c); see also id. at 14-16 [letters to district attorney's office discussing alleged prior assault of same bus driver in May 2008].)

## IV.

## DISCUSSION

In the Petition, Petitioner admits that none of these claims were raised on direct appeal to the California Court of Appeal, in a petition for review to the California Supreme Court, or in a habeas petition to the California Supreme Court. (Id. 5-6 ¶ 8.) The opinion of the California Court of Appeal confirms that these grounds were not raised on direct appeal. The Petition also indicates that Petitioner has not filed any habeas petitions in any state court with respect to the murder conviction and commitment order. (Id. at 3 ¶ 6.) It therefore appears that these claims are unexhausted and that the Petition should be dismissed without prejudice to the Petition being re-filed after the claims are exhausted.

Additionally, to the extent Petitioner is seeking to recover monetary damages based on his treatment by deputies at the West Valley Detention Center, this type of relief cannot be sought in a petition for writ of habeas corpus. "Federal law opens

two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus … and a [civil rights] complaint under the Civil Rights Act of 1871 … 42 U.S.C. § 1983." Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus … ; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Id. The Ninth Circuit has held that claims falling within the "core" of habeas are those that would "necessarily lead to [the petitioner's] immediate or earlier release from confinement"; all other claims must be brought in a civil rights action under 42 U.S.C. § 1983. Nettles v. Grounds, 830 F.3d 922, 935 (9th Cir. 2016) (en banc), cert. denied, 137 S. Ct. 645 (2017). Thus, if Petitioner believes that his federal constitutional rights were violated while he was a pre-trial detainee and wishes to seek monetary compensation for those violations, he would need to file a civil rights complaint seeking such compensation.[3]

Although in some circumstances a district court may convert an improperly habeas petition into a civil rights complaint, Petitioner's habeas petition is not amenable to conversion on its face, in part because other claims seek to challenge his murder conviction. Moreover, filing a civil rights complaint differs from filing a habeas petition in the following ways:

- The filing fee in a habeas action is $5, but the filing fee in a civil rights action is $350. Even if granted leave to proceed without *pre-paying* the filing fee in a civil rights action, a prisoner plaintiff is required to pay the full amount of the $350 filing fee by way of deductions from his prison trust account. See 28 U.S.C. § 1915(b)(1).
- If, while incarcerated, a prisoner files 3 civil rights complaints that are

---

[3] If Petitioner believes that he is a class member in a class action lawsuit brought by attorney Sharon Brunner, he can write to her law office at: 14393 Park Avenue, Suite 101, Victorville, CA 92392-3302.

|    |    |
|----|----|
| 1  | dismissed as "frivolous, malicious, or [for] fail[ure] to state a claim upon |
| 2  | which relief may be granted," the prisoner may not file future actions |
| 3  | without the prepayment of filing fees "unless the prisoner is under |
| 4  | imminent danger of serious physical injury." 28 U.S.C. § 1915(g). |
| 5  | • There are different pre-filing exhaustion requirements for habeas petitions |
| 6  | and civil rights complaints.  Before filing a habeas petition, the petitioner |
| 7  | generally must exhaust his remedies *in state court* by filing habeas |
| 8  | petitions.  Before filing a civil rights complaint, a prisoner plaintiff |
| 9  | generally must exhaust his *administrative* remedies by, for example, filing |
| 10 | prison grievances.  See Nettles, 830 F.3d at 932 n.8. |
| 11 | // |
| 12 | // |
| 13 | // |
| 14 | // |
| 15 | // |
| 16 | // |
| 17 | // |
| 18 | // |
| 19 | // |
| 20 | // |
| 21 | // |
| 22 | // |
| 23 | // |
| 24 | // |
| 25 | // |
| 26 | // |
| 27 | // |
| 28 | // |

## V.

## CONCLUSION

IT IS HEREBY ORDERED that, on or before **February 21, 2022**, Petitioner is ordered to show cause why the Petition should not be dismissed without prejudice as unexhausted. In response to this Order to Show Cause, Petitioner should do **one** of the following:

(1) Explain when and how Petitioner believes any or all of the claims in the Petition were exhausted in the state courts.

(2) File a notice voluntarily dismissing the Petition, which would not bar Petitioner from re-filing the Petition after the claims are exhausted in the state courts.

(3) File a motion to stay this action. A stay would freeze AEDPA's one-year statute of limitations and permit Petitioner to return to state court to exhaust his claims without concern that the statute might expire. As discussed above under Section II, a stay may be available under Rhines v. Weber, 544 U.S. 269 (2005) if Petitioner can meet the three-part test described above in Section II.[4]

DATED: January 20, 2022

*Karen E. Scott*
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] Petitioner may file habeas petitions in the state courts, in order to exhaust his claims, while this Petition is pending in federal court. The one-year federal statute of limitations for filing a federal habeas petition under 28 U.S.C. § 2254 may be tolled while Petitioner seeks to exhaust his claims, as long as the period has not yet expired when Petitioner files his first state court petition. See 28 U.S.C. § 2244(d)(2); Carey v. Saffold, 536 U.S. 214, 219-21 (2002); Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.), cert. denied, 540 U.S. 924 (2003).